**UNITED STATES, Appellee,**

v.

**Private (E-1) Richard S. KUPCHIK, SSN 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, United States Army, Appellant.**

**CM 437137.**

U. S. Army Court of Military Review.

14 Dec. 1978.

---

Captain Terrence L. Lewis, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, and Major Carlos A. Vallecillo, JAGC.

Captain Brian X. Bush, JAGC, argued the cause for the appellee. With him on the brief were Lieutenant Colonel R. R. Boller, JAGC, and Captain Douglas P. Franklin, JAGC.

Before FULTON, TALIAFERRO and WATKINS, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

On his pleas of guilty, the appellant was convicted of several charges stemming from the events described below.

The appellant falsely represented to Private Beth Ann Hamler that he was a first lieutenant in the Army and the officer-in-charge of the post swimming pool. When she later entrusted $550 to him on his promise to purchase an automobile for her, he neither purchased the auto nor returned the money. Specialist Four Sutton learned of the impersonation and ensuing larceny and made a statement to Army criminal investigators implicating the appellant. Thereafter, the appellant dictated to Sutton a false statement which purported to recant Sutton's earlier statement and asserted that Sutton knew of no false personation by the appellant and averred that he had seen the appellant lend Hamler $500, which she had promised to repay. After Sutton wrote the dictated statement, the appellant had it typed and, when Sutton signed it, obtained a notarization and caused it to be delivered to Agent Surian of the criminal investigation detachment.

The appellant also falsely represented to Privates Cindy Davis and Deborah Wright that he was a commissioned officer; namely, a lieutenant in the United States Army Reserve. In addition, he withheld from Pri-

vate Jennifer Julson two sums of money that she had advanced to him to obtain an apartment for her. Finally, when placed in arrest in quarters, the appellant absented himself from his unit without authority for a period of almost four months.

Pursuant to a plea bargain, the convening authority withdrew charges of stealing money from Specialist Four Sutton and of obtaining Sutton's signature on the false statement by extortion, and the appellant pleaded guilty to specifications of false impersonation of a commissioned officer (2), larceny (3), making a false official statement and unauthorized absence. The general court-martial members sentenced him to a dishonorable discharge, confinement at hard labor for five years, and forfeiture of all pay and allowances. Consistent with the terms of the plea bargain, the convening authority reduced the term of confinement to eight months and approved all other aspects of the sentence.

In our appellate review pursuant to Article 66 of the Uniform Code of Military Justice, 10 U.S.C. § 866 (1976), the appellant attacks the sufficiency of one of the specifications alleging false impersonation of an officer, the providency of his plea of guilty to making a false official statement, the admissibility of certain military records in the sentencing proceedings, and the propriety of the trial counsel's argument during the sentencing proceedings.

## I

The appellant was charged with falsely representing himself as a commissioned officer to Private Hamler (from whom he also stole money) with the "intent to defraud" her. However, as to Privates Davis and Wright, he was charged simply with "wrongfully, willfully and unlawfully" impersonating a commissioned officer by telling them that he was a Reserve lieutenant. He now asserts that the specification is insufficient to state an offense because "there is no allegation of fraud or attempt

to use the claimed position for personal advantage in any way." In other words, the "wrongfulness must be alleged in more specific terms."

■ The specification follows exactly the form prescribed in the Manual for Courts-Martial and charges an offense less severe than impersonation with the intent to defraud. Manual for Courts-Martial, United States, 1969 (Revised edition), App. 6c at A6–23; *see id.*, App. 12 at A12–6. An intent to defraud need be neither pleaded nor proved. *See United States v. Collymore*, 11 U.S.C.M.A. 666, 29 C.M.R. 482 (1960); *United States v. Gillispie*, 9 C.M.R. 299 (ABR 1953). The Court of Military Appeals has said that "the gravamen of the military offense of impersonation [as distinguished from related civilian offenses] does not depend upon the accused deriving a benefit from the deception or upon some third party being misled, but rather upon whether the acts and conduct would influence adversely the good order and discipline of the armed forces." *United States v. Messenger*, 2 U.S.C.M.A. 21, 24–25, 6 C.M.R. 21, 24–25 (1952). We hold, therefore, that the specification alleged an offense.[1]

## II

Likewise without merit is the appellant's attack on the providency of his plea of guilty to the offense of making a false official statement in violation of Article 107, Uniform Code of Military Justice, 10 U.S.C. § 907 (1976). His contention rests on the alternative propositions that the appellant was not the maker of the statement and that even if he did, the statement was not "official" within the meaning of Article 107 because the appellant was protected by Article 31 of the Code, 10 U.S.C. § 831 (1976), and was not independently obliged to make any statement.

To reflect decisions of the Court of Military Appeals construing Article 107, the following observation has been incorporated

---

1. We also are satisfied that the record establishes a sufficient factual basis for each element of the offense, including the element of

prejudice to good order and discipline, to render provident the appellant's plea of guilty.

into the Manual for Courts-Martial: "A statement made by a suspect or an accused person during an interrogation is not official within the meaning of this article if he did not have an independent duty or obligation to speak concerning the matter under inquiry." Manual for Courts-Martial, *supra*, para. 186. *United States v. Aronson*, 8 U.S.C.M.A. 525, 25 C.M.R. 29 (1957); *United States v. Washington*, 9 U.S.C.M.A. 931, 25 C.M.R. 393 (1958); and *United States v. Geib*, 9 U.S.C.M.A. 392, 26 C.M.R. 172 (1958), are cited as the basis for the quoted insertion. U. S. Dept. of Army Pamphlet 27–2, *Analysis of Contents: Manual for Courts-Martial, United States, 1969 Revised Edition* (28 July 1970), p. 28–10.

■ The answer to the appellant's argument—and to the Government's unnecessary concession that it is correct—is the fact that neither the quoted provision of the Manual nor the decisions upon which it is based apply to the appellant's situation. While he undoubtedly was a suspect, and may have been advised of his rights against self-incrimination, he was not under interrogation, directly or indirectly, and no statement was being sought or expected from him.[2] Similar spontaneous and voluntary conduct constitutes the civilian offense of violating section 1001 of title 18, United States Code; not falling within an "exculpatory no" exception. *United States v. Johnson*, 530 F.2d 52 (5th Cir. 1976), *cert. denied,* 429 U.S. 833, 97 S.Ct. 96, 50 L.Ed.2d 97 (1976).[3] Article 107 is to be similarly construed. *See United States v. Collier*, 48 C.M.R. 112, 113–15 (ACMR 1973), *aff'd,* 23

U.S.C.M.A. 173, 48 C.M.R. 789 (1974). Accordingly, we hold that the appellant's plea of guilty to making a false official statement was provident.[4]

### III

■ Two of the appellant's challenges to the admissibility of exhibits used during the sentencing proceedings are clearly without merit. Immaterial errors in official personnel records do not render them unofficial and affect only their weight as evidence, not their admissibility. *See United States v. Anderten*, 4 U.S.C.M.A. 354, 359–60, 15 C.M.R. 354, 359–60 (1954). The defects asserted by appellant in one of three records of nonjudicial punishment admitted into evidence are of a type we have held not to preclude admissibility in *United States v. Berry*, 2 M.J. 576 (ACMR 1977).

Of potentially more serious proportions are the appellant's complaints concerning the admission (albeit without objection at the trial) of a documentary "Bar to Reenlistment" unaccompanied by any endorsements indicating the final action thereon and an order promulgating the results of his 1976 trial by summary court-martial, resulting in a suspended sentence to confinement, without evidence that he was represented by counsel or evidence as to the circumstances of his not being represented. *See United States v. Booker*, 5 M.J. 238 (CMA 1977), *modified*, 5 M.J. 246 (CMA 1978); *United States v. Alderman*, 22 U.S.C.M.A. 298, 46 C.M.R. 298 (1973); *but see*

---

2. Moreover, as the appellant's alternative argument recognizes, the statement delivered to the Army criminal investigators did not even purport to emanate from the suspect (appellant).

3. *Accord,* as to the applicability of 18 U.S.C. § 1001 (1976) to statements made to investigators (FBI) concerning investigation already in progress, *United States v. Mitchell*, 397 F.Supp. 166, 173–74 (D.D.C.1974), *aff'd sub nom. United States v. Haldeman*, 181 U.S.App.D.C. 254, 559 F.2d 31 (1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

4. Appellant cites no authority for his view that he was not the maker of the false statement. The Government's reply is that he is at least guilty as an aider and abettor. See Art. 77,

UCMJ, 10 U.S.C. § 877 (1976). In view of our holding, we think it unnecessary to decide. We note, however, that the prosecution apparently proceeded on the basis that appellant was the principal, probably in the belief that he obtained the statement through extortion although that charge was dropped and there was no evidence of extortion in the record. Accordingly, the providency inquiry did not include any explanation of the law of aiding and abetting as required by *United States v. Craney*, 1 M.J. 142 (CMA 1975). We nevertheless feel that the inquiry fairly established the degree of appellant's culpability and fulfilled the purpose of *Craney*.

*United States v. Nordstrom,* 5 M.J. 528, 535–37 (NCMR 1978) (Baum, J., concurring).

■ We agree, however, with the Government's contention that any error in this regard did not prejudice the appellant. In view of all of the other evidence bearing upon the appellant's record of conduct, the disparity between the maximum sentence and that adjudged and between the sentence adjudged and that agreed to and approved, we find no risk that the appellant is burdened with a more severe sentence than otherwise would be the case.

### IV

The error asserted concerning the trial counsel's sentence argument to the court members is that he expressed his personal belief as to the truth or falsity of testimony and that, even absent an objection from the defense counsel, the military judge should have given a curative instruction. *See* American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function, § 5.8(b) (Appvd Draft 1971).

■ The challenged remarks were made at the outset of a lengthy prosecution argument that occupies some seven pages of the record. The trial counsel said only that "the Government fails to see any remorse whatsoever in the way that Private Kupchik portrayed himself to you on the witness stand." Because the appellant (who made a brief unsworn statement through questioning by his counsel) had not said that he was sorry or remorseful, the trial counsel's statement was not an attack on his veracity, but rather a comment on the lack of evidence of remorse. We hold that under the circumstances the remark does not offend any ethical standards and was not error. Moreover, even if error, it was not at all of the magnitude to require instruction sua sponte by the trial judge.

The findings of guilty and the sentence are affirmed.

Judge TALIAFERRO and Judge WATKINS concur.